UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 05-196-C**

**ROY LEE WOODS,**                                                                           **PETITIONER,**

**V.**                      **MEMORANDUM OPINION AND ORDER**

**LARRY CHANDLER, WARDEN,**                                       **RESPONDENT.**

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court on the petitioner's application for a writ of habeas corpus (DE 1) and the respondent's motion to dismiss or for summary judgment (DE 9). The court referred this matter to the Honorable Dave Whalin, Magistrate Judge for the United States District Court for the Western District of Kentucky, who issued the Proposed Findings of Fact and Recommendation (DE 12). The petitioner has filed an objection to the Magistrate Judge's report. When the parties to an action submit such objections, the district court reviews the record *de novo.* 28 U.S.C. § 636 (b)(1)(C).

**I.   Background**

On January 26, 1996, the petitioner was sentenced to life imprisonment for trafficking in a controlled substance, criminal mischief in the first degree, and two counts of wanton murder. The factual findings made by the Supreme Court of Kentucky are presumed to be correct absent clear evidence to the contrary. 28 U.S.C. § 2254(e)(1). Both parties agree to the facts as stated in that court's decision:

> Appellant Francis Gerald Thomas desired to purchase one kilogram of cocaine for $27,000.00 and asked Kenneth Furman to assist him in arranging the purchase. Furman contacted Aaron McDuffie, who in turn contacted Appellant Roy Lee Woods, who agreed to obtain the cocaine, sell it to Thomas, and share some of the profits with Furman and

McDuffie. Arrangements were made to consummate the transaction on February 8, 1995 at Trixie's Lounge on Preston Highway in Louisville. Woods and McDuffie, along with Appellant Avery Graves, arrived at Trixie's in a vehicle driven by Woods. Thomas and Furman arrived at Trixie's in a vehicle driven by Thomas. McDuffie testified that he, Woods and Graves encountered Thomas and Furman at a pay phone inside Trixie's, and that he, Woods and Graves all directed Thomas and Furman to follow them to the parking lot. Woods and Thomas went to Thomas's vehicle; McDuffie, Graves and Furman went to Woods's vehicle. Graves got into the driver's seat and McDuffie got into the front passenger seat of Woods's vehicle. Meanwhile, Thomas delivered $27,000.00 to Woods, who returned to his vehicle and placed the money in its trunk. He and McDuffie then gave Furman $500.00 as part payment of Furman's share. When Furman inquired, "[w]here's the dope," Woods replied that he had given it to Thomas. Graves, with McDuffie still in the front passenger seat and Woods in the back seat, then drove the Woods vehicle out of the parking lot and north on Preston. When Furman returned to Thomas's vehicle, Thomas inquired,"[w]here's the dope," and Furman replied, "I thought you had it." Thomas, with Furman in the front passenger seat, then drove his vehicle out of the parking lot and north on Preston in hot pursuit of Woods's vehicle.

  The two vehicles sped north on Preston Street, then on Shelby Street. There was evidence that the vehicles were traveling between 70 and 100 miles per hour in a 35 miles per hour zone and that gunfire was exchanged between Woods and Thomas. Ultimately, Graves drove the Woods vehicle through a red light at the intersection of Shelby and Eastern Parkway and broadsided a vehicle owned and being operated by Clara McDonald. McDonald and her son, Robert McDonald, were killed and McDonald's vehicle was substantially damaged by the collision. Thomas drove his vehicle through the same red light and collided with yet another vehicle owned and being operated by Kenneth Weathers, causing substantial damage to Weathers's vehicle. Both accidents were witnessed by a police officer who arrived on the scene within moments. Graves was pinned behind the steering wheel of Woods's vehicle and was arrested at the scene. Thomas, Woods, Furman, and McDuffie all fled the scene. Woods was discovered hiding in a nearby White Castle Restaurant. McDuffie, Thomas and Furman escaped, but were arrested later. The $27,000.00 was recovered from

> the trunk of Woods's car, but no cocaine was found.
> Graves, Thomas and Woods appeal their subsequent convictions in the Jefferson Circuit Court of trafficking in a controlled substance in the first degree, wanton murder (two counts), and criminal mischief in the first degree. The operators of the two vehicles, Graves and Thomas, were also convicted of wanton endangerment in the first degree, speeding, and disregarding a traffic control device. Thomas was additionally convicted of failure to stop and render aid (leaving the scene of an accident). All three appellants were sentenced to life in prison for each of the wanton murder convictions and to lesser penalties for the other offenses, each sentence to run concurrently with the others.

*Graves v. Commonwealth*, 17 S.W.3d 858, 861-62 (Ky. 2000).

On direct appeal, the petitioner argued that these facts did not support the wanton murder convictions under the standard adopted by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), because neither his participation in the drug trafficking offense nor his presence as a passenger in the car that Graves was driving met the requisite level of culpability. The Supreme Court of Kentucky found that the method by which the petitioner perpetrated the trafficking offense was sufficient to support his conviction under *Bennett v. Commonwealth*, 978 S.W.2d 322, 326-28 (1998). The Kentucky Supreme Court denied his petition for rehearing, and the United States Supreme Court denied a petition for certiorari. Pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42, the petitioner moved the trial court to vacate its judgment, and the trial court denied the motion. The Kentucky Court of Appeals affirmed the trial court's order, and the Supreme Court of Kentucky denied the petitioner's motion for discretionary review. The petitioner filed for federal habeas corpus relief on April 6, 2005, on the sole ground that the guilty verdicts for wanton

murder are not supported by sufficient evidence.

## II.     Standard of Review

Review of petitions for habeas corpus is governed by the Anti-terrorism and Effective Death Penalty Act of 1966 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. The standard is codified at 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of the statute, a federal court may grant relief if the state courts in affirming the conviction arrived at a conclusion opposite to that reached by the Supreme Court on a question of federal constitutional law or the state court decided the prisoner's case differently than the Supreme Court decided the same constitutional question on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003); *Moss v. Hofbauer*, 286 F.3d 851, 858 (6th Cir. 2002). "Contrary to" means "diametrically different, opposite in character or nature, or mutually opposed." *Doan v. Brigano*, 237 F.3d 722, 731 (6th Cir. 2001).

Under the "unreasonable application" clause of the statute, relief is warranted if the state courts in affirming the conviction identify the correct governing principle of constitutional law from decisions of the Supreme Court, but they unreasonably apply that principle to the facts in the case. *Williams*, 529 U.S. at 407-08; *Campbell v. Coyle*, 260 F.3d 531-39 (6th Cir. 2001). The key question in an unreasonable application analysis is whether the state court decision was objectively unreasonable, not whether it was merely erroneous or incorrect. *Macias v. Makowski*, 291 F.3d 447, 451 (6th Cir. 2002); *Martin v. Mitchell*, 280 F.3d 594, 602-03 (6th Cir. 2002).

### III.  The Petitioner's Objections to the Report and Recommendation

The petitioner objects to the Magistrate Judge's conclusion that substantial evidence supported the wanton murder convictions on the grounds that (1) the Magistrate Judge's analysis tracks the theft-by-deception charge rather than the charge of drug trafficking; and (2) the Supreme Court's application of *Jackson* was not objectively reasonable, because the petitioner's conduct was not wanton; the drug trafficking transaction was completed before the car accident occurred; and the petitioner's conduct did not cause the victims' death.

#### A.  The Underlying Charge

At trial, the jury found the petitioner not guilty of the charges of theft by deception and wanton murder in the course of theft by deception. The petitioner argues that the Magistrate Judge's conclusion that sufficient evidence supports the convictions of wanton murder in connection with the drug trafficking offense is actually based on an analysis of the proof related to theft by deception.

5

The Magistrate Judge reasoned that it was foreseeable that a dangerous chase would ensue after Woods accepted $27,000.00 for cocaine that he did not intend to deliver.  Theft by deception occurs when a "person obtains property or services of another by deception with intent to deprive the person thereof."  K.R.S. § 514.040(1).  The petitioner asserts that the Magistrate Judge's interpretation of the facts tracks the elements of theft by deception but does not assess the sufficiency of the evidence supporting the conviction based on drug trafficking.

To the contrary, the Magistrate Judge concluded that "Woods created the entire situation that occurred that evening *by the manner in which he conducted the drug transaction,*" including attempting to cheat Thomas, endeavoring to escape, and engaging in a high-speed running gun battle.  Report, at 14. The Magistrate Judge's analysis is based on the petitioner's role in the cocaine transaction and therefore does not improperly subject the petitioner to double jeopardy on the theft-by-deception wanton murder charge.

  B. <u>Application of the *Jackson* Standard</u>

When a conviction is challenged for insufficient evidence, review is guided by the standard announced by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979).  The Court held that "the relevant question is whether, after reviewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in original).  As stated by the Supreme Court of Kentucky, "if from the totality of the evidence the judge can conclude that reasonable minds might fairly find guilt beyond a

reasonable doubt, then the evidence is sufficient to allow the case to go to the jury even though it is circumstantial." *Commonwealth v. Sawhill*, 660 S.W.2d 3, 4 (Ky. 1983).

Wanton murder is committed when one "wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." K.R.S. § 507.020(b). To satisfy the *Jackson* standard, the evidence must be sufficient that a reasonable jury could find each element of the offense beyond a reasonable doubt.

### 1. Wantonness

The petitioner argues that his conviction for wanton murder does not satisfy the *Jackson* standard, because his conduct in the underlying drug trafficking offense was not wanton. Under Kentucky law,

> [a] person acts wantonly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstances exist. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation.

K.R.S. § 501.020(3). The standard of conduct necessary for a wanton murder conviction consists of four elements: (1) the defendant's conduct must create a substantial and unjustifiable risk; (2) the defendant must be aware of that risk and consciously disregard it; (3) the defendant's disregard of the risk must constitute a gross deviation from a reasonable standard of conduct in the situation; and (4) there must be circumstances manifesting extreme indifference to human life. K.R.S. 507.020, cmt.

7

One Kentucky court has stated that "[m]urderous intent is as much a component of wanton murder as it is of intentional murder. It is an equally culpable mental state differing in that, while the consequences of the act are equally foreseeable, the actor is indifferent to who is/are the victim(s)." *McGinnis v. Commonwealth*, 875 S.W.2d 518, 520-21 (Ky. 1994). The petitioner asserts that, based on *McGinnis*, a wanton murder conviction requires an additional element of murderous intent.

The *McGinnis* explanation is misleading in its apparent suggestion that intent to kill is required to support a conviction for wanton murder. Rather, wantonness is considered to represent culpability sufficient to warrant *treating* the defendant as though he had such intent. "The justification for treating this type of '*unintentional*' homicide as murder" is that wantonness that is sufficiently extreme to demonstrate indifference to the value of human life "should be assimilated to [intention]." K.R.S. § 507.020, cmt. (*quoting* Model Penal Code, § 201.2, comment 2 (Tent. Draft No. 9, 1959)) (emphasis added). Examples of wanton conduct envisioned by the legislature include "shooting into a crowd, an occupied building or an occupied automobile; placing a time bomb in a public place; or derailing a speeding locomotive." K.R.S. § 507.020, cmt. Subsequent to *McGinnis*, the Kentucky Supreme Court has explicitly clarified that "[i]ntent is not an element of wanton murder." *Bennett*, 978 S.W.2d at 327. If *McGinnis* were read to require an intent to kill in cases of wanton murder, then K.R.S. § 507.020(1)(b) would effectively be written out of the penal code. 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 3.23 (4th ed. Anderson 1993) cmt. Therefore, the absence of facts showing that the petitioner had murderous intent does not render the wanton murder

convictions objectively unreasonable.

The petitioner further contends that trafficking in a controlled substance is not wanton, as participation in a drug transaction does not entail a conscious disregard of a known risk of a subsequent high-speed chase and shootout.  The petitioner claims that it is objectively unreasonable to conclude that drug trafficking creates a risk of death in the manner it occurred in this case that is so great that to disregard it manifests an extreme indifference to human life.  While the petitioner may be correct that participating in a drug trafficking transaction does not automatically entail a wanton disregard for human life, a reasonable trier of fact could find that the manner in which the petitioner orchestrated this particular deal does demonstrate the necessary state of mind.  It is foreseeable that a determined and dangerous pursuit would ensue when one party to a $27,000.00 cocaine transaction attempts to abscond without honoring his end of the bargain, and a failure to appreciate the concomitant risks could reasonably be deemed wanton.

### 2. *Completion of the Transaction*

The petitioner argues and the dissent in the Kentucky Supreme Court opinion reasoned that the conviction of wanton murder in connection with the drug trafficking crime was not supported by sufficient evidence, because the drug transaction had ended by the time the deaths occurred.  Specifically, the petitioner urges that, at the time the car accident happened, he was fleeing from Thomas, *not* attempting to complete a drug transaction.

A reasonable jury could have found that the drug transaction, which was initiated

in the Trixie's parking lot, was still in progress throughout the chase and when the crash occurred. Drug trafficking includes selling and transferring. K.R.S. § 218A.010(24) (1994). It is not manifestly unreasonable to conclude that the chase was an attempt to complete the trade. Thomas had given the petitioner money for cocaine, but he had not yet received anything in exchange, and the contemplated transaction therefore had not yet been consummated when the accident necessarily terminated the petitioner's attempted flight. Therefore, a reasonable fact-finder could determine that the drug transaction would end only with the delivery of drugs, and that the petitioner was still involved in the underlying drug trafficking offense when the victims were killed.

       3.    *Causation*

Finally, the petitioner contends that, because he was merely a passenger in the automobile that struck the McDonalds' vehicle, he did not cause the deaths as required for the wanton murder convictions. The petitioner asserts that the wanton murder instruction given by the trial court technically enabled the jury to find him guilty on those charges without finding that he caused the deaths. To convict him of wanton murder, the jury was required to find:

> a. That during the course of Trafficking in a Controlled Substance in the First Degree and as a consequence thereof, [the victim] was killed;
> AND
> b. That by so participating in the offense of Trafficking in a Controlled Substance in the First Degree the defendant was wantonly engaging in conduct which created a grave risk of death to another and that [the victim's] death was caused under circumstances manifesting extreme indifference to human life.

*Graves,* 17 S.W. 3d at 868 (Keller, J., dissenting).[1] The petitioner did not preserve the error at trial or raise the propriety of the jury instructions in his habeas corpus application, and the court finds that the instruction, as written, does not constitute palpable error. See Ky. RCr 10.26 (insufficiently raised or preserved errors reviewed for palpable error or manifest injustice).

As explained by the Kentucky Supreme Court,

> the instructions required the jury to find that the appellants were wantonly engaging in conduct which created a grave risk of death to another and that the victims' deaths were caused *under circumstances* manifesting extreme indifference to human life. KRS 507.020(1)(b) predicates guilt upon a finding that '*under circumstances* manifesting extreme indifference to human life, [the defendant] wantonly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person.' (Emphasis added.) The instruction given by the trial judge comports with the language of the statute and is virtually identical to the instruction recommended at 1 Cooper, *Kentucky Instructions to Juries (Criminal)* § 3.23 (4th ed. Anderson 1993).

*Graves,* 17 S.W.3d at 864-65. The recommended wanton murder instruction reads:

> You will find the Defendant guilty of Murder under this instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:
>
> A. That in this county on or about [date] and before the finding of the Indictment herein, he killed [victim] by [method];
>
> AND
>
> B. That in doing so, he was wantonly engaged in conduct which created a grave risk of death to another and thereby caused the death of [victim] under circumstances manifesting an extreme indifference to human life.

---

[1] Instructions 3 and 9 track this language, inserting the names Clara McDonald and Robert McDonald, respectively.

*Kentucky Instructions to Juries (Criminal)* § 3.23.

The given instruction requires that the victim was killed in the course of the drug trafficking offense; the recommended instruction requires a finding that the defendant killed the victim in the course of the underlying offense.  Nonetheless, the court finds that for both sections to be satisfied, causation is implicit in the instruction as given, because the defendant's wanton conduct must have created the circumstances "manifesting extreme indifference to human life" that caused the victims' deaths.

A reasonable jury could have found that the petitioner caused the victims' deaths, even though he was not driving the automobile that struck theirs.  The petitioner points to various unpredictable "intervening factors" — Thomas's decision to chase the petitioner and Graves, the speed at which the chase occurred, the gun battle accompanying the chase, Graves's care in operating the vehicle, and the route Graves chose to take — that he contends preclude a finding that his conduct caused the fatal accident.  The purported "intervening factors" are part of the circumstances manifesting extreme indifference to human life that the petitioner created and that culminated in the deadly car accident.  A reasonable trier of fact could conclude that the circumstances arose directly from the petitioner's decisions to take the money without giving cocaine in exchange, attempt to escape from the intended purchasers, and engage in a gun battle during that attempted escape.  It is not unreasonable to find, therefore, that the petitioner's wanton behavior caused the resulting deaths.

### IV.     Certificate of Appealability

A Certificate of Appealability may be issued where "the applicant has made a

12

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a substantial showing is made when it is evident that "reasonable jurists could debate whether ... the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 532 U.S. 322, 336 (2003) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Three of the seven justices of the Kentucky Supreme Court dissented from the opinion on direct appeal, finding that the wanton murder convictions were not supported by sufficient evidence, because the drug transaction on which the conviction was predicated was no longer in progress when the accident occurred. Reasonable jurists could disagree over the disposition of the petitioner's application, and therefore a certificate of appealability shall issue as to whether the evidence adduced at trial is sufficient to support the defendant's convictions for wanton murder.

### V.   Conclusion

The court finds that the defendant's motion for a directed verdict on the two counts of wanton murder was properly denied, because a reasonable trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found that there was sufficient evidence to find each necessary element beyond a reasonable doubt. Accordingly,

**IT IS ORDERED** that the Magistrate Judge's Proposed Findings of Fact and Recommendation (DE 12) is **AFFIRMED** and is **ADOPTED** as this court's opinion.

**IT IS FURTHER ORDERED** that the respondent's motion to dismiss (DE 9) is

**GRANTED**, and the petitioner's application for a writ of habeas corpus (DE 1) is **DISMISSED** without prejudice.

    **IT IS FURTHER ORDERED** that a Certificate of Appealability shall issue with regard to whether the evidence at trial was sufficient to support the defendant's convictions for wanton murder.

Signed on  March 29, 2006

                                    **Jennifer B. Coffman, Judge**
                                    **United States District Court**